UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOWARD S. ROSS,<br>INDIVIDUALLY AND AS BENEFICIARY<br>OF THE MILTON AND ROSE ROSS<br>IRREVOCABLE INSURANCE TRUST,<br>AND AS TRUSTEE THEREOF<br><br>      Plaintiffs,<br><br>v.<br><br>JACKSON NATIONAL LIFE<br>INSURANCE COMPANY,<br><br>      Defendant. | Civil No. 19-12364-LTS |

ORDER ON PENDING MOTIONS (DOC. NOS. 35, 36, 40, 42, 49, 51)

June 2, 2020

SOROKIN, J.

Plaintiff Howard Ross, an attorney representing himself, brought this action on October 16, 2019 in state court seeking specific performance of a life insurance policy and alleging that Defendant Jackson National Life insurance Company engaged in unfair conduct in violation of Mass. Gen. Laws 176D and 93A by failing to pay the proceeds of the policy to him, personally. Doc. No. 1-1 ¶¶ 12-13.[1]  Defendant removed the case on diversity grounds to federal court on November 18, 2019.  Doc. No. 1.  Upon removal, Defendant answered the complaint and counterclaimed for an interpleader pursuant to Federal Rule of Civil Procedure 22 and 28 U.S. § 1335 seeking permission to pay the death benefit at issue to the Clerk of the Court.  Doc. No. 7.

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

Shortly thereafter, Plaintiff moved for summary judgment. <u>Doc. No. 17</u>. The Court denied Plaintiff's motion without prejudice as premature and ordered the parties to submit a chronology of relevant facts to the Court, along with certain pertinent documents. Doc. No. 26. The parties submitted a Joint Statement of Undisputed Fact on February 7, 2020.

Now pending before the Court are several motions: Plaintiff's motion for judgment on the pleadings (<u>Doc. No. 35</u>), Defendant's motion for interpleader deposit (<u>Doc. No. 36</u>), Plaintiff's motion to amend the complaint to add a wiretapping count (<u>Doc. No. 40</u>), and Defendant's motion to dismiss the proposed amended complaint (<u>Doc. No. 42</u>). These motions are fully briefed and the Court heard oral argument on May 28, 2020. For the reasons that follow, the Court DENIES Plaintiff's motion for judgment on the pleadings (<u>Doc. No. 35</u>), ALLOWS IN PART Defendant's motion for interpleader deposit (<u>Doc. No. 36</u>) to the extent of resolving the amount of the disputed insurance proceeds but otherwise DENIES the motion, DENIES Plaintiff's motion to amend the complaint to add a wiretapping count (<u>Doc. No. 40</u>), and ALLOWS Defendant's motion to dismiss the proposed amended complaint (<u>Doc. No. 42</u>).

After the hearing, Plaintiff filed several more motions. Plaintiff's motion (<u>Doc. No. 51</u>) requesting that the Court direct the parties to change the beneficiary of the insurance policy at issue to the Rose K. Ross Family Trust is DENIED as is his Motion to Submit the Contents of Two Tape recordings (<u>Doc. No. 49</u>). Plaintiff's motion for interest (<u>Doc. No. 50</u>) remains under advisement pending a response from Defendant.

I.    BACKGROUND

Plaintiff is the only child of Milton and Rose Ross and is the Trustee and Beneficiary of the Milton and Rose Ross Irrevocable Insurance Trust.  Doc. No. 34 ¶¶ 2, 6.[2]  The Rosses had a "second to die" insurance policy with a face amount of $250,000, payable upon the death of the second parent.  Plaintiff's father died in 2004 and his mother died on May 31, 2019.  Doc. No. 1-1 ¶¶ 1, 3-4.  Plaintiff brings this action individually, as beneficiary of the Milton & Rose Ross Irrevocable Insurance Trust, and as Trustee thereof, to recover on the insurance policy.  Id. ¶ 1.

Plaintiff alleges that for many years prior to his mother's death in 2019, he personally paid the annual premiums Defendant sent to him and that Defendant knew that he was paying the premiums.  Id. ¶ 3.  Plaintiff timely notified Defendant of both of his parents' deaths, and delivered to Defendant death certificates proving both deaths, as well as the claim and payment form.  Id. ¶ 5.  Defendant refuses to pay the death benefit to Plaintiff personally as the beneficiary of the policy.  Id. ¶ 6.

A.   The First Application for Insurance (the 693 Application)

On January 26, 1990, Defendant received an application in its Florida office for a $250,000 Last Survivor Ultimate Life Insurance Policy, signed by Mr. Milton Ross and Mrs. Rose Ross. ("the 693 Application") (Doc. No. 34-1, bates stamped Jackson 000029-000030).  Doc. No. 34 ¶ 7. The 693 Application listed the Proposed Insureds as Milton and Rose Ross.  Id. ¶ 9.  Under Section

---

[2] The facts recounted here are taken from the Complaint (Doc. No. 1-1) and the parties' Joint Statement of Facts (Doc. No. 34).  The Court accepts all facts to which the parties stipulate as true. There are certain facts to which Ross says he will not stipulate because he is not in a position to determine whether they are true.  See Doc. No. 34 at 15-16.  Jackson has submitted a declaration and accompanying exhibits as evidence of the facts to which Ross will not stipulate.  See Doc. No. 36.  In light of this evidence and Ross's failure either to produce contrary evidence or to move for leave to take discovery as to the facts to which he would not stipulate, the Court also accepts these facts as true.

II of the 693 Application, the option for an Accidental Death ("ADB") rider was checked "yes." Id. ¶ 10.  Section III of the 693 Application requested the name of the Owner of the life insurance policy "if other than the Proposed Insured," and this field was left blank.  Id. ¶¶ 11-12.

In Section IV of the 693 Application, Milton and Rose Ross listed the primary beneficiary of the life insurance policy as "Howard S. Ross Son 100%."  Id. ¶ 13.  In Section IV of the 693 Application, the contingent beneficiary is listed as "Estate."  Id. ¶ 14.  The 693 Application was signed by Milton and Rose Ross at the bottom of the second page of the application.  Id. ¶ 15.

B.  The Second Application for Insurance (the 686 Application)

Another Application for a $250,000 Ultimate Life Last to Survive life insurance policy was signed by Milton and Rose Ross ("the 686 Application") (Doc. No. 34-2, bates stamped Jackson 000109-000110).  Id. ¶¶ 16-17.  The 686 Application was not stamped as "received" by Defendant and the date of the document appears unclear, though it was dated some time in 1990.  Id. ¶ 18. Like in the 693 Application, the Proposed Insureds in the 686 Application were Milton and Rose Ross.  Id. ¶ 19.  Under Section II of the 686 Application, the option for an Accidental Death ("ADB") rider was checked "no."  Id. ¶ 20.  In Section III of the 686 Application, the "Applicant (Owner)" of the life insurance policy was listed as "The Milton D. Ross & Rose K. Ross Irrevocable Insurance Trust," and the word "PENDING" was hand printed in the box under "Social Security Number or Taxpayer ID Number."  Id. ¶¶ 21-22. Section IV of the 686 Application states that the "the beneficiary" is "Howard S. Ross, Son, Trustee, 100% for the Trust owner."  Id. ¶ 23. In the 686 Application, the contingent beneficiary box was left blank.  Id. ¶ 24.  The 686 Application was signed by Milton and Rose Ross.  Id. ¶ 25.  It was also signed by Howard S. Ross. Id. ¶ 26.

4

C.   The Original Insurance Policy

Defendant issued a Last Survivor Whole Life Policy to Milton and Rose Ross for a face amount of $250,000 bearing a stated "Issue Date" of April 10, 1990 and a stated "Policy Date" of "March 1, 1990" (the "Original Policy").  Id. ¶ 27.  The face of the Original Policy states that the Insureds as "Milton D. Ross and Rose K. Ross."  Id. ¶ 29.  Milton and Rose Ross were also listed as "the Owners" of the Original Policy.  Id. ¶ 30.  The Original Policy identified the beneficiary as Howard S. Ross.  Id. ¶ 31.  The annual premium for the Original Policy was $7,655.00, to begin on March 1, 1990.  Id. ¶ 32.

D.   The Reissued Policy

On or about May 7, 1990, Jackson sent a notice to the insured's agent, Mr. Alvin J. Magalnick, advising that the Original Policy was to be re-issued with the "New Application attached to switch out in the policy.  Amendment is no longer needed as the New Application indicates the ADB [Accidental Death Benefit] is not requested."  Id. ¶ 33.  According to an internal Policy Issue Worksheet in Defendant's files, Defendant was instructed to "Delete ADB," to amend the owner of the policy to the "M & R Ross Irrev. Ins. Tr.," and to amend the beneficiary to "Howard S. Ross, Trustee."  Id. ¶ 34.

The first annual premium for the Reissued Policy of $7,655 was received on May 7, 1990. Id. ¶ 35.  The 693 Application was marked "Void" in Defendant's files; the marked application was never sent to the Rosses or sent or emailed to Plaintiff at any time prior to the filing of this lawsuit.  Id. ¶ 36.  The policy was re-issued and mailed to the Florida Office of the agent who sold the Policy on May 17, 1990 (the "Reissued Policy") (Doc. No. 34-7, bates stamped Jackson 000001 – 0000021).  Id. ¶ 37.

The Reissued Life Insurance Policy bears the same number as the Original Policy and is a $250,000 life insurance policy insuring the lives of Milton and Rose Ross to be paid on the death of the last surviving insured.  Id. ¶ 38.  On the Reissued Policy, the Policy Owner was changed to "Milton & Rose Ross Irrev. Ins. Tr."  Id. ¶ 39.  The beneficiary is not listed directly but is identified "as Indicated on Application."  Id. ¶ 41.  The Reissued Policy states that "premiums cease on second death."  Id. ¶ 42.

The Reissued Policy also states: "The consideration for issuing this Policy is the application and the payment of the first premium.  This Policy and the application, . . . constitute the entire contract between the parties."  Id. ¶ 43.  And the Reissued Policy states that "[t]he interest of any Beneficiary who dies before the second Insured to die will end at the death of the Beneficiary," and that "[i]f the interest of all designated Beneficiaries has ended, any proceeds will be payable to the estate or legal successors of the second Insured to die."  Id. ¶¶ 44-45.  The 686 Application is attached to the Reissued Policy in Jackson's files.  Id. ¶ 46.  On or about May 22, 1990, the Reissued Policy was delivered to the insureds in Florida.  Id. ¶ 47.

On May 30, 1990, Defendant received an Affidavit of Lost Policy and Request for Duplicate of Lost Policy.  Id. ¶ 48.  On March 21, 1991, Mr. Milton Ross asked Jackson to send him a copy of his Policy.  Id. ¶ 49.  On March 27, 1991, Jackson issued a Lost Policy Certificate showing the name of the insureds, the owner, "M & R Ross, Irr. Ins. Tr.," and that annual premiums of $7,655 would be owed through 03-01-2022.  Id. ¶ 50.

### E.   The dispute over the payment of the last annual premium

On or about January 28, 1997, Plaintiff elected to deduct the annual premiums of $7,655 out of the Policy's accumulated cash value.  Id. ¶ 52.  As a result, as long as there was sufficient accumulated cash value in the Policy, Plaintiff would not be required to make an annual premium

payment.  Id. ¶ 53.  If, however, the accumulated cash value was insufficient to pay the premiums due, Plaintiff "would be billed for the full premiums necessary to continue this policy."  Id. ¶ 54.

On May 20, 2004, Milton D. Ross passed away and Plaintiff furnished Defendant with a copy of his father's death certificate.  Id. ¶ 56.  On March 1, 2013, Defendant sent Plaintiff a lapse warning notice informing him that the Policy had entered its Grace Period because there were insufficient funds in the Policy's accumulated cash value to pay the annual premiums and that the premium was due.  Id. ¶ 57.  On March 18, 2013, Plaintiff called Defendant's service department and was told that they would order an illustration to see whether the Policy's accumulated cash value could pay the premium for the year 2013.  Id. ¶ 58.  On March 18, 2013, Defendant notified Plaintiff that the Policy's accumulated cash value had been depleted and that Plaintiff would need to resume making annual premium payments of $7,655 starting on March 1, 2014.  Id. ¶ 59.

On March 2, 2017, Ms. Laura Hanson, Defendant's Vice President of Policy Owner Services sent Plaintiff a letter stating: "The above-referenced life insurance policy is paid up under either the Non-Forfeiture Option chosen or the standard contract verbiage."  Id. ¶ 60.  On May 15, 2018, Ms. Laura Hanson, Defendant's Vice President of Policy Owner Services sent Plaintiff another letter stating: "This letter is to confirm that the policy is paid-up; no further premiums are due."  Id. ¶ 64.  On April 3, 2019, however, Defendant sent Plaintiff a letter stating:

> On behalf of Jackson, please accept our apologies that the letter you received dated May 15, 2018, that stated your policy was paid up was sent in error.  The policy is not paid up.  This policy is a Joint Last Survivor Ultimate Interest Sensitive Whole Life Policy.  The policy insures two people and pays out on the last to die.  The policy premium and maturity date are based off of a joint equal age.  Due to an error, the system used  the base age of 100, to calculate  the paid up and maturity date, instead of the joint issue age of 100.  The policy is not paid up and premiums still need to be paid from March 1, 2019, until March 1, 2022, the Maturity Date.  Due to Jackson's error we have waived the March 1, 2017 and March 1, 2018 annual premium.  The annual premium amount due for March 1, 2019, is $7,655.00.  The premium amount required for March 1, 2020 and March 1, 2021, will be $7,655.00.  We regret any inconvenience or concern we have caused.

7

<u>Id.</u> ¶ 65.

On April 22, 2019, Plaintiff sent a M.G.L. 176 D and 93A Claim letter to Defendant by certified mail in which Plaintiff stated, *inter alia*, that Plaintiff included a check for $7,655 for the premium which Jackson then claimed to be owed in 2019.  <u>Id.</u> ¶ 66.  On May 15, 2019, Defendant sent Plaintiff a letter stating:

> As stated in our apology and informational letter dated April 3, 2019, this misunderstanding was due to a system error.  To be clear, the further premiums that are and may become due are consistent with the terms of the policy, rather than a result of the system error and the letters generated from that error.  These premiums are part of the policy contract as issued.

<u>Id.</u> ¶ 67.

On May 31, 2019, Rose Ross passed away in Florida.  <u>Id.</u> ¶ 68.  When Mrs. Ross passed away, Defendant claimed that Plaintiff owed a premium payment in the amount of $7,655.00.  <u>Id.</u> ¶ 69.  Pursuant to the terms of the Policy, the Policy was in its grace period.  <u>Id.</u>  The Policy further provides that when the insured dies during the grace period, "the unpaid premium . . . then in effect will be deducted from the proceeds of the Policy."  <u>Id.</u>

On June 19, 2019, Plaintiff sent Defendant a letter enclosing a death certificate and requesting the payment of the death benefit, stating:

> My mother and your insured, Rose K. Ross, passed away on May 31. I enclose one original death certificate in the envelope to you, Ms. Hanson.

> ****

> Please have the $250,000 check issued and sent to me immediately, to be mailed to: Howard Ross, [address appearing in letter omitted here].

> This $250,000 check, due to me now, should NOT be held up at all because of the outstanding issue we have regarding your claim for an additional premium payment of $7,000, which as you know, I dispute, and which I again now ask you to withdraw your claim for.

Id. ¶ 70.

On July 3, 2019, Defendant wrote Plaintiff stating:

This is in response to your June 19, 2019 letter to the Jackson National Life
Insurance Company ("Jackson") Customer Relations Department regarding the
above referenced Policy number.

* * * *

An Initial Notice packet, including a claim form is being sent to you under separate
cover. This claim will be promptly paid when we have all the necessary
information.  Your April 22, 2019 correspondence states that you enclosed the
required $7,655.00 premium payment; however, following a thorough review, we
have no documentation that the check was received.  If you can provide a copy of
the cleared check showing it was accepted by Jackson, the premium will be applied
accordingly.

Id. ¶ 71.

F.   The dispute over whether the trust is the correct beneficiary

On April 26, 2018, Defendant sent Plaintiff a letter stating: "Our records indicate the policy

was issued on March 1, 1990.  The application provided at issue stated that the trust tax

identification number was pending.  Please complete the enclosed W9 form with the correct tax

identification number for the trust."  Id. ¶ 61.

On April 27, 2018, Plaintiff sent an email to Defendant which stated, in part, as follows:

In followup [sic] of our conversation yesterday and previously with Jenny at  ext
28305, please email me back to confirm that you have added my ss# to your file on
the above policy to authorize you in the future to speak and communicate with me
regarding this policy upon my giving verbally my personal ss# for this 2nd to die
policy for which NO HUMAN BEING IN THE WORLD, except for Jackson,
currently has the insurance trust tax id number associated with this policy, in which
my dad Milton Ross passed in 2004 and my mom Rose is 9 1/2 [sic] years old.

Id. ¶ 62.

On May 4, 2018, Defendant sent Plaintiff another letter stating: "Thank you for your recent request for a Social Security Number change.  Below is a list of the requirement(s) we will need before processing: The enclosed form must be filled out in the name of the Trust."  Id. ¶ 63.

Mrs. Ross passed away on May 31, 2019.  Id. ¶ 68.  On July 20, 2019, Defendant sent a claim form to Plaintiff claiming that the beneficiary was the Trust and requested that Plaintiff return the claim form, a Final Certified Death Certificate; a copy of the Trust Agreement; and a tax identification number for the Trust.  Id. ¶ 72.  On August 5, 2019, Plaintiff returned the claim form requesting payment of the death benefit to him personally and enclosed a copy of his mother's death certificate.  Id. ¶ 73.  Plaintiff advised that he did not have a copy of the trust agreement.  Id.

On September 4, 2019, Defendant sent Plaintiff an email asserting that the Trust was the beneficiary under the Policy and that a claim form was needed from the Trust, including a tax identification number, before the death benefit could be paid.  Id. ¶ 74.  A series of email exchanges then transpired between Plaintiff and Defendant from September 4, 2019 through September 10, 2019.  Id. ¶ 75.  Plaintiff sent Defendant another certified letter, which was received by Defendant on August 12, making further claims for relief including costs, attorney fee, and double or treble damages as authorized by M.G.L. c. 176D and M.G.L. 93A.  Id. ¶ 76.

As a result of the failure to resolve the issue of who should receive the death benefit, on October 16, 2019, Plaintiff filed a complaint in Massachusetts state Court requesting payment of the death benefit and allegations of violations of both M.G.L. 176D and M.G.L. 93A.  Id. ¶ 77.

On November 18, 2019, Defendant removed the state court action to this Court.  Id. ¶ 78.  On November 21, 2019, Defendant filed an Answer, Affirmative Defenses, and Third-Party Interpleader Complaint seeking an order to deposit the death benefit into the Court and to be released from any other obligations under the Policy.  Id. ¶ 79.  On December 20, 2019, Plaintiff

filed his Answer to Defendant's Interpleader Complaint.  Id. ¶ 80.  The Rose Ross estate is comprised of her will and "The Rose K. Ross Family Trust" as restated and amended through 2008 per the documents filed with the Court.  Id. ¶ 81.

## II.   DISCUSSION

The parties ask that the Court conclusively determine the beneficiary entitled to the insurance proceeds.  This requires that the Court first determine which insurance policy is the operative policy.  As to the latter question, the Court determines that the Reissued Policy, which is based on the Second Application (the 686 Application), is the operative policy.   Although the date on the 686 Application appears unclear, Doc. No. 34, ¶ 18, Jackson sent a notice to the insured's agent, Mr. Alvin J. Magalnick, advising that the Original Policy was to be re-issued with the "New Application attached to switch out in the policy" on or about May 7, 1990, id. ¶ 33— several months after the original application was submitted to Jackson in January 1990, id. ¶ 7. The 686 Application was signed by Milton and Rose Ross, and by Plaintiff.  Id. ¶¶ 25, 26.

Moreover, on March 21, 1991, Mr. Milton Ross asked Jackson to send him a copy of his Policy.  Id. ¶ 49.  On March 27, 1991, Jackson issued a Lost Policy Certificate showing the name of the insureds, the owner, "M & R Ross, Irr. Ins. Tr.," and that annual premiums of $7,655 would be owed through 03-01-2022.  Id. ¶ 50.  The Court therefore determines that the Reissued Policy, which is based on the 686 Application, is the operative insurance policy.

There is no dispute that the beneficiary of the Reissued Policy is the Milton D. Ross & Rose K. Ross Irrevocable Insurance Trust.  Doc. No. 34 ¶ 21.  Neither party, it appears, has any knowledge of, or any information or documents evidencing the trust.  The Court therefore concludes the Milton D. Ross & Rose K. Ross Irrevocable Insurance Trust does not exist.

The Reissued Policy provides that "[t]he interest of any Beneficiary who dies before the second Insured to die will end at the death of the Beneficiary," and that "[i]f the interest of all designated Beneficiaries has ended, any proceeds will be payable to the estate or legal successors of the second Insured to die." Id. ¶¶ 44-45.  The parties agree and the Court finds that because the designated Beneficiary—the Milton D. Ross & Rose K. Ross Irrevocable Insurance Trust—does not exist, and because Mrs. Rose K. Ross was the second Insured to die, the insurance proceeds are payable to "the estate or legal successors" of Mrs. Ross.

A. Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 35)[3]

Plaintiff asks the Court to declare that he is entitled to the insurance proceeds at issue. Doc. No. 35.  A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss.  Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007).  "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . ."  R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  Because the pleadings evince a serious dispute as to who is entitled to the proceeds of the insurance policy, the Court DENIES Plaintiff's motion for judgment on the pleadings as to that issue (Doc. No. 35).  Even considered on the broader record before the Court, the request is also DENIED for the reasons stated above.

In the alternative, Plaintiff asks that if the Court declines to declare that he is entitled to be paid the proceeds of the insurance policy, then "since neither party has the Trust document, and

---

[3] The motion is titled "Plaintiff's Verified Under Oath Motion Re the Disposition {i.e., the Payee to Whom} the Jackson Policy Proceeds Should Be Paid." Doc. No. 35 at 1.  The  Court treats the motion as a motion for judgment on the pleadings as to the question of who is entitled to the insurance proceeds at issue.

payment is to be made to 'The Estate' of Rose, and since there is no Estate opened, but rather, Rose's Will provides and created The Rose Ross Family Trust, which Does exist and Does have an account into which the check Can be deposited," the Court should order that "the policy proceeds be paid by a check payable to The Rose K. Ross Family Trust." Doc. No. 35 at 1.

The Court notes that Plaintiff's request appears in keeping with the residuary estate provision of the Last Will and Testament of Rose K. Ross, which provides:

> All the rest, residue and remainder of my property and estate, of whatever nature and wheresoever the same may be situate, I give and devise unto the Trustee under a certain Trust Agreement entered into between me, ROSE K. ROSS, as Granter, and me, ROSE K. ROSS, as Trustee, and any Successor Trustees thereto, dated of even date herewith, entitled THE ROSE K. ROSS FAMILY TRUST. Said property shall be added to the corpus of the Trust fund therein established as an integral part thereof, to be held, administered and distributed by the Trustee in accordance with all the terms and provisions of the said Trust Agreement as the same may be amended at the time of my death, notwithstanding that any such amendment may have been made subsequent to this Will or any Codicil hereto.

Doc. No. 33-1 at 5-6. Nevertheless, Plaintiff's request is beyond the scope of the Court's jurisdiction to determine the rights and obligations of the parties to this action and is therefore DENIED.

Pursuant to the terms of the Reissued Policy, Jackson shall pay the insurance proceeds to Plaintiff Howard S. Ross as personal representative of the estate or legal successor of Mrs. Rose K. Ross.

> B. <u>Defendant's Motion for Interpleader Deposit (Doc. No. 36) and Plaintiff's Motion to Submit the Contents of Two Tape recordings (Doc. No. 49)</u>

Jackson seeks three things in its motion for interpleader deposit (Doc. No. 36): (a) to be permitted to deposit the insurance proceeds into the Court; (b) a determination that the insurance proceeds do not include the disputed last premium payment of $7,655.00; (c) that the Court dismiss Jackson with prejudice from this litigation and discharge it from any further liability under the

Policy.  In light of the Court's resolution of Plaintiff's motion for judgment on the pleadings, Jackson's first request is DENIED AS MOOT.

As to the amount of the insurance proceeds, the Court is persuaded that the proceeds do not include the disputed last annual premium payment of $7,655.00.  Ross has produced no evidence to show that the last annual premium payment was in fact made, and he has stipulated to the fact that at the time of his mother's death, the insurance policy was in its grace period.  Doc. No. 34 ¶ 69.  Pursuant to the terms of the Policy, when the insured dies during the grace period, "the unpaid premium . . . then in effect will be deducted from the proceeds of the Policy."  Id. Therefore, the Court ALLOWS IN PART Defendant's motion for interpleader deposit to the extent of holding that the insurance proceeds to be paid amount to $242,345 ($250,000 - $7,655).

Post-hearing, Plaintiff filed a motion asking the Court to equitably estop Defendant from claiming that the final premium payment under the policy is due.  See Doc. No. 49.  It is undisputed that Defendant told Plaintiff in 2018 that the policy was paid up until 2022 and then in 2019 reversed itself, explaining that the earlier statement was made in error.  See Doc. No. 34 ¶¶ 60, 64, 65.  When explaining the error, Defendant described the methodology for determining payment was due and provided the reason for the earlier error.  Id. ¶ 65.  Defendant also waived the 2017 and 2018 payments due to its error.  Id.  Plaintiff has demonstrated no reliance on the 2018 statements.  In these circumstances, there is no basis for the application of estoppel principles. See, e.g., Hebert v. Vantage Travel Serv., No. 17-cv-10922-DJC, 2020 U.S. Dist. LEXIS 43023, *24-25 (D. Mass. March 12, 2020) ("Under Massachusetts law, an estoppel claim must assert that (1) a party made a representation intended to induce reliance on the part of a person to whom the representation is made; (2) a person acts in reasonable reliance on the representation; and (3) the party suffers a detriment as a consequence of the act. . . . The party asserting the estoppel theory

has a heavy burden to prove that all three elements are present.") (internal quotation marks, citations, and alterations omitted).  Accordingly, Plaintiff's Motion (Doc. No. 49) is DENIED.[4]

Jackson's third request is DENIED because the Court must resolve the question of interest (Doc. No. 50) and Ross has alleged additional claims against Jackson that must still be adjudicated.

> C. Plaintiff's Motion to Amend the Complaint to add Count re Wiretapping (Doc. No. 40) and Defendant's Motion to Dismiss the Proposed Amended Complaint (Doc. No. 42)

Ross seeks to amend his complaint to add a count of violation of the Massachusetts Wiretapping Statute, M.G.L. ch. 272, § 99, on the grounds that Jackson allegedly recorded its conversations with Ross without asking his consent or disclosing that it was doing so.  Doc. Nos. 40, 41, 46.  Jackson moves to dismiss the proposed supplemental complaint.  Doc. No. 42.

As a threshold matter, the motion to amend is procedurally improper because it violates Rule 15(a) of the Federal Rules of Civil Procedure, which allows for amending the complaint after an answer has been filed only with the other party's written consent or with leave of the Court, neither of which Ross had before filing his motion to amend.

On the merits, the proposed supplemental complaint fails to state a claim because Ross concedes that he was informed that the calls "may" be recorded, Doc. No. 43 at 8-9—he alleges only that he was not informed that they "were in fact being recorded or going to be recorded," Doc. No. 46 at 1-2—and he never objected or asked that they not be recorded.  Moreover, the calls were being recorded at Jackson's offices in Michigan, a one-party consent state.  Sullivan v. Gray, 324 N.W.2d 58, 60 (Mich. App. 1982) ("An individual may not expect those he converses with to record their discourses.  Still, absent a request that discussions be held 'off the record', it is only

---

[4] Previously, the Court directed Defendant to respond to this Motion.  See Doc. No. 52.  After further review, that Order is VACATED.

reasonable to expect that a conversation may be repeated, perhaps from memory or from the handwritten notes of a party to the conversation.  A recording made by a participant is nothing more than a more accurate record of what was said.").

In any event, because the recordings took place in Michigan, they are outside the reach of the Massachusetts Wiretapping Statute.  Pendell v. AMS/Oil, Inc., Civ. No. 84-4108, 1986 U.S. Dist. LEXIS 26089, *12-13 (D. Mass. April 30, 1986) ("There is no language whatsoever to indicate that the [Massachusetts Wiretapping] statute was intended to be given extraterritorial effect.  As a general rule, when no such intention is clearly expressed, it is presumed that the statute was intended to be applicable only within the territorial jurisdiction of the enacting governmental body.") (citation omitted).

For these reasons, Plaintiff's motion to amend his complaint to add a cause of action under the Massachusetts Wiretapping Statute (Doc. No. 40) is DENIED and Defendant's motion to dismiss the proposed supplemental complaint (Doc. No. 42) is ALLOWED.

### D. Plaintiff's Post-Hearing Motion that the Court Utilize the Insurance Policy Language to Resolve and Adjudicate the Payee Issue (Doc. No. 51)

After the hearing on the above motions, Ross filed a motion invoking the change of beneficiary clause of the insurance contract.  Doc. No. 51.  The clause provides: "While this policy is in force, the Owner may change the Beneficiary, unless otherwise provided by endorsement, by filling at the Home Office of the Company an acceptable written request."  Doc. No. 51-1 at 1.  By its terms, this provision allows only for the "Owner" of the Policy to change the beneficiary.  Id.  Here, the Owner of the operative policy is the Milton D. Ross & Rose K. Ross Irrevocable Insurance Trust, not Howard Ross, so the provision is of no assistance to him.  Thus, this Motion is DENIED.

III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court orders and declares that:

1.      The operative policy is the Reissued Policy, which was issued pursuant to the 686 Application;

2.      The Milton D. Ross and Rose K. Ross Irrevocable Insurance Trust was the owner of the operative policy and the beneficiary of the operative policy;

3.      The Milton D. Ross & Rose K. Ross Irrevocable Insurance Trust does not now exist and has never existed;

4.      The Reissued Policy provides that in the event the designated beneficiary (here, the Milton D. Ross & Rose K. Ross Irrevocable Insurance Trust) does not exist or ceases, the insurance proceeds are to go to the estate or successors of the second Insured to die, here Mrs. Rose K. Ross;

5.      Plaintiff's motion for judgment on the pleadings (<u>Doc. No. 35</u>) is DENIED;

6.      Defendant's motion for interpleader deposit is ALLOWED IN PART to the extent of determining that the insurance proceeds do not include the last annual premium amount of $7,665;

7.      Plaintiff's motion to amend his complaint to add a cause of action under the Massachusetts Wiretapping Statute (<u>Doc. No. 40</u>) is DENIED;

8.      Defendant's motion to dismiss the proposed supplemental complaint (<u>Doc. No. 42</u>) is ALLOWED.

9.      Plaintiff's Motion to Submit Tape Recordings (<u>Doc. No. 49</u>) is DENIED.  The previous Order directing a response to this motion from the Defendant (Doc. No. 52) is VACATED as issued in error.

10.     Plaintiff's motion to direct the parties to change the beneficiary (Doc. No. 51) is DENIED.

The Court will direct Defendant to pay the proceeds of the policy, minus the final premium described above, to the Estate of Mrs. Rose K. Ross upon resolution of the pending question of interest.  The parties shall file a status report within 14 days presenting their respective positions as to the disposition of the remainder of the case.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge